**STOLTZ MANAGEMENT CO., INC.,**
**Appellant-Below, Appellant,**

v.

**CONSUMER AFFAIRS BOARD,**
**Appellee-Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 22, 1992.
Decided: Oct. 19, 1992.
Reargument Denied: Nov. 10, 1992.

Barbara MacDonald (argued), and Peter A. Pietra, Morris, James, Hitchens & Williams, Wilmington, for appellant.

Stuart B. Drowos (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal by Stoltz Management Co., Inc. ("Stoltz") from a Superior Court ruling which affirmed a decision of the Consumer Affairs Board ("Board"). The Board's decision had upheld an earlier Cease and Desist Order issued by the Director of the Division of Consumer Affairs ("Director"), ordering Stoltz to cease charging its tenants a non-refundable redecorating fee. Stoltz contends that the Board's decision, affirmed by the Superior

Court, was erroneous as a matter of law and was not based on substantial evidence.

Stoltz raises two contentions in this appeal. First, it contends that the Board's finding that the redecorating fee was a nonconforming security deposit was not based on substantial evidence and, more broadly, that the Board erred as a matter of law in ruling that the redecorating fee conflicted with the Delaware Landlord–Tenant Code, 25 *Del.C.* §§ 5101–6724 ("Landlord–Tenant Code"). Second, Stoltz argues that the Board erred as a matter of law in retroactively requiring Stoltz to refund redecorating fees Stoltz had collected from tenants prior to the Director's Order.

We conclude that the Board did not err as a matter of law in ruling that the redecorating fee conflicted with the Landlord–Tenant Code and in applying its order retroactively. Hence, we affirm the decision of the Superior Court.

I

Stoltz owns and manages several apartment complexes in New Castle County, including The Plaza, Society Hill, Thomas West House and Arbor Pointe Apartments. In 1988, Stoltz began charging new tenants of these complexes a non-refundable redecorating fee. It was Stoltz's policy to apply the redecorating fee to defray a portion of the costs incurred by Stoltz at the conclusion of the tenancy in repairing and correcting damage to apartment units resulting from normal wear and tear and, if necessary, other damage beyond normal wear and tear. Specifically, the redecorating fee was used by Stoltz to help finance its practice of cleaning the carpets and repainting the walls before reletting the apartment.

In early 1989, the Director began an investigation into Stoltz's practice of charging a redecorating fee. The Director is authorized under 29 *Del.C.* § 8823 to issue Cease and Desist Orders against persons or businesses found to be in violation of any one of several statutes, including the Landlord–Tenant Code.[1] As a result of this investigation, the Director determined that the redecorating fee was in violation of 25 *Del.C.* § 5511(a), (b), (c), and (e) and, on July 16, 1990, issued a Cease and Desist Order, enjoining Stoltz from charging the redecorating fee. Upon issuance of the Order, Stoltz filed a timely appeal to the Board pursuant to 29 *Del.C.* § 8824(b)(1).

During the pendency of the appeal to the Board, a decision was rendered in the Superior Court in a related matter, *Stoltz Management Co., Inc. v. Phillip,* Del.Super., 593 A.2d 583 (1990) ("*Phillip*"). In *Phillip,* an appeal from a Justice of the Peace decision in favor of the tenant, the Superior Court held that Stoltz's use of the redecorating fee to defray the costs of repairing "other damages beyond wear and tear" was a violation of 25 *Del.C.* § 5511. *Id.* at 587. However, the Superior Court also suggested that charging tenants a non-refundable redecorating fee to defray the costs of repairing and correcting damages to the apartment units resulting from normal wear and tear would be permissible. *Id.*

In response to the ruling in *Phillip,* Stoltz modified the lease provision relating to the redecorating fee to provide that the fees could be used only to cover damages resulting from normal wear and tear. Shortly thereafter, on January 31, 1991, the Board held a *de novo* hearing to determine whether the "modified" redecorating fee violated the Landlord–Tenant Code. On February 14, 1991, the Board issued its decision, finding the redecorating fee to be in conflict with the Landlord–Tenant Code. In addition, the Board held that pursuant to 29 *Del.C.* § 8824(b)(1) it was empowered to alter or amend the Director's Order and did so, giving it retroactive effect. The Board's decision required Stoltz to cease charging the redecorating fee and to return to all current tenants redecorating fees previously collected. Stoltz filed an appeal

---

1. On July 1, 1991, supervision over the Division of Consumer Affairs was transferred from the Department of Community Affairs to the Department of Administrative Services. The gov-
erning statutes were recodified from 29 *Del.C.* § 8612–8614 to 29 *Del.C.* §§ 8823–8825. We cite the statutes as they are currently codified.

to the Superior Court pursuant to 29 *Del.C.* § 8824(b)(1). The Superior Court affirmed the Board's decision as being free from legal error and supported by substantial evidence.[2] This appeal followed.

## II

Our standard of review mirrors that of the Superior Court. Where there is a review of an administrative decision by both an intermediate and a higher appellate court and the intermediate court received no evidence other than that presented to the administrative agency, the higher court does not review the decision of the intermediate court but, instead, directly examines the decision of the agency. *Baker v. Connell*, Del.Supr., 488 A.2d 1303, 1309 (1985). On appeal from a decision of an administrative agency the reviewing court must determine whether the agency ruling is supported by substantial evidence and free from legal error. *State, Dept. of Labor v. Medical Placement Services, Inc.*, Del.Super., 457 A.2d 382, 383 (1982), *aff'd*, Del. Supr., 467 A.2d 454 (1983). Absent an abuse of discretion, the decision of the agency must be affirmed. *Id.* However, where, as here, the issue is one of construction of statutory law and the application of the law to undisputed facts, the court's review is plenary. *E.I. du Pont de Nemours Co., Inc., v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

## III

The Landlord–Tenant Code, which has been part of our law since 1972, is a comprehensive enactment of the reciprocal legal obligations between landlords and tenants. *Phillip*, 593 A.2d at 585; 58 *Del. Laws*, Ch. 472. Its applicability is defined in 25 *Del.C.* § 5103(a).

> This code shall regulate and determine all legal rights, remedies, and obligations of the parties and beneficiaries of any rental agreement of a rental unit within this State, wherever executed. Any agreement, whether written or oral, shall be unenforceable insofar as the agreement or any provision thereof conflicts with any provision of this code and is not expressly authorized herein....

Stoltz concedes that the Landlord–Tenant Code does not expressly authorize the charging of a non-refundable redecorating fee by a landlord. Thus, such a fee is permissible only if it does not conflict with any substantive provision of the Landlord–Tenant Code. 25 *Del.C.* § 5103(a).

Certain provisions of the Landlord–Tenant Code bear upon the landlord's duty of maintenance and the extent maintenance costs may be shifted to the tenant through payments other than rent.

25 *Del.C.* § 5511 regulates the collection and use of security deposits.

> (a) If a rental agreement requires the tenant to provide any deposit to the landlord to be held for the term of the rental agreement, or any part thereof, said deposit shall be considered a security deposit.
>
> \* \* \*
>
> (c) The purpose of the security deposit shall be:
>
> (1) To reimburse the landlord for actual damages, above normal wear and tear which can be corrected by painting and ordinary cleaning, caused to the premises by the tenant;
>
> (2) To pay the landlord for all rental arrearage due under the rental agreement, including rental due for premature termination of the rental agreement by the tenant; and
>
> (3) To reimburse the landlord for all reasonable expenses incurred in renovating and reletting the premises caused by the premature termination of the rental agreement by the tenant, which includes termination pursuant to § 5509(b), provided that reimbursement caused by termination pursuant to § 5509(b) shall not exceed 1 month's rent.

---

**2.** *Stoltz Management Co., Inc. v. Consumer Affairs Board*, Del.Super., C.A. No. 91A–03–7, 1991 WL 215901, Taylor, J. (Oct. 17, 1991) (ORDER).

25 *Del.C.* § 5303 imposes several duties upon the landlord, including that of maintaining the premises.

> (a) The landlord shall at all times during the tenancy:
>
> * * * * * *
>
> (4) Make all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good condition as they were, or ought by law or agreement to have been, at the commencement of the tenancy....

However, the landlord and tenant are permitted to agree that the tenant will: ... perform specified repairs, maintenance tasks, alterations or remodeling, but only if:

> * * * * * *
>
> (3) Adequate consideration apart from any provision of the rental agreement is exchanged for the tenant's promise....

25 *Del.C.* § 5303(b)(3).

The Landlord–Tenant Code imposes upon the landlord the duty of maintaining the rental unit in "as good condition as [it was] ... at the commencement of the tenancy." 25 *Del.C.* § 5303(a)(4); 25 *Del.C.* § 5303(b)(3); *see also Ford v. Ja–Sin,* Del.Super., 420 A.2d 184, 186 (1980). The issue here is the manner in which the landlord may require the tenant, if at all, to contribute towards paying the expense of that maintenance. To the extent that any damage to the rental unit exceeds that which would result from "normal wear and tear which can be corrected by painting and ordinary cleaning," the landlord may apply the security deposit to the expense of repair. 25 *Del.C.* § 5511(c)(1). However, the landlord must follow the statutory restrictions on the use of security deposits.

█ Stoltz maintains that, since the decision in *Phillip,* 593 A.2d 583 (1990), it has not used its redecorating fee to finance repairs of damages beyond those caused by normal wear and tear and the Board's decision to the contrary is not supported by substantial evidence. However, we need not decide whether the Board's decision was supported by substantial evidence since Stoltz's redecorating fee is in violation of the Landlord–Tenant Code, even if it was used solely to finance repairs arising from normal wear and tear. We view pertinent provisions of the Landlord–Tenant Code, when read in *para materia,* to require that damages to the rental unit arising from normal wear and tear be borne by the landlord out of the rent.

The Landlord–Tenant Code provides specific sources from which the landlord may obtain funds. The landlord may collect rent in an agreed amount, 25 *Del.C.* § 5501(a); a late rent charge, 25 *Del.C.* § 5501(d); a separate charge for utilities, 25 *Del.C.* § 5114; and a security deposit. 25 *Del.C.* § 5511. In addition to these direct payments, the Landlord may seek reimbursement for certain "repairs, maintenance tasks, alterations or remodeling," 25 *Del.C.* § 5303(b); the cost of remedying breaches of contracts, 25 *Del.C.* § 5505(a)(1); waste and failure to report defective conditions, 25 *Del.C.* § 5505(c) and 5506(a); harm resulting from tenant's extended absence or early termination, 25 *Del.C.* § 5508(a) and 5508(d)(1); the cost of summary possession, 25 *Del.C.* § 5711(a); and the cost of removal and storage of tenant's property. 25 *Del.C.* § 5715(d).

These provisions demonstrate the Landlord–Tenant Code's comprehensive listing of the landlord's monetary entitlements from sources other than rent. The Landlord–Tenant Code places no limits on the power of the landlord and tenant to agree to the amount of rent.[3] However, the Landlord–Tenant Code specifically qualifies and regulates those instances when the landlord may collect money from the tenant other than the agreed rent. The only possible inference from the listing of these provisions is that, where they do not apply, the landlord is limited to collecting the agreed

---

3. Except to the extent that landlords are prohibited from implementing retaliatory rent increases. 25 *Del.C.* § 5716.

rent as complete remuneration for the rental contract.

Apart from the payment of rent, none of the provisions allowing the landlord to collect money from the tenant authorize recovery for damages resulting from normal wear and tear. Indeed, under 25 *Del.C.* § 5508(d)(1) the landlord is specifically forbidden from collecting for normal wear and tear. The costs to which Stoltz's redecorating fee are directed are expected to be covered by rent. They are the usual, normal and foreseeable costs which flow from renting. As stated earlier, the Landlord–Tenant Code does not limit the power of the landlord and tenant to agree to the amount of rent. The landlord is free to consider a myriad of expenses in calculating the amount of rent it wishes to charge, including the anticipated cost of repairing damages caused by normal wear and tear. However, the landlord is not free to recover this cost by charging a separate fee.

To allow the landlord to cover ordinary costs through a separate fee would permit the landlord to advertise a rental unit at one price (rent) yet actually lease it at a higher price (rent and fee). Such a practice would run counter to an acknowledged purpose of the Landlord–Tenant Code—the clear statutory definition of the rights and duties of the landlord and tenant, including their financial obligations, in order to prevent abuses. *Phillip*, 593 A.2d at 587. Moreover, the Landlord–Tenant Code allows the prepayment of rent but requires that the rent be "uniformly apportionable from day to day." 25 *Del.C.* § 5501(c). To permit rent to be segmented in a manner which partially conceals rent as a non-refundable fee, payable at the beginning of the tenancy, would contravene both the language of the Landlord–Tenant Code and the policy underlying its adoption.

■ In the absence of a specific provision of the Landlord–Tenant Code which provides otherwise, the landlord's remuneration is limited to rent proceeds. Segmenting a portion of this rent as a non-refundable redecorating fee is incompatible with the underlying purpose of the Landlord–Tenant Code. 25 *Del.C.* § 5501. We thus hold that Stoltz's "modified" redecorating fee and its policy of applying the fee only to the repair of damage caused by normal wear and tear is not in compliance with the Landlord–Tenant Code.

IV

■ The Director's Order required Stoltz to cease collection of the redecorating fee and was solely prospective. After review *de novo*, the Board modified the Director's Order, giving it retroactive effect. Stoltz contends that the Board erred as a matter of law in retroactively requiring Stoltz to refund redecorating fees which Stoltz had collected from tenants prior to the Director's Order.

The United States Supreme Court has established three factors to be considered in determining whether a decision should be given retroactive effect.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Company v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted).

■ The presumption is in favor of giving a decision retroactive effect and the party seeking to avoid retroactive application bears the burden of persuasion. *Juzwin v. Asbestos Corp., Ltd.*, 3rd Cir., 900 F.2d 686, 693 (1990). The force of the presumption in favor of retroactivity will

incline a court to deny retroactive application "only where on balance the weight of the three *Chevron* factors favor prospective application." *Id.* In our view all three *Chevron* factors favor retroactive application of the ban against charging a redecorating fee and thus we find no error in the Board's ruling.

Although the Board's decision establishes a new principle of law, the announced principle did not overrule clear past precedent. The Delaware courts, in passing upon various provisions of the Landlord–Tenant Code, have noted its emphasis on the allocation of specific duties and obligations to both parties to the lease.[4] But there is no precedential support for Stoltz's assertion that its redecorating fee would be permitted by implication under the Landlord–Tenant Code. At most, on the eve of the Board's hearing, but after the Director's Order, the Superior Court indicated by dicta in *Phillip* that such a fee might be permissible. This is far from established precedent and, as noted above, such dicta is unsupportable in the light of the Landlord–Tenant Code's emphasis on specific authority for remuneration.

The Board's decision in disallowing the redecorating fee was also clearly foreshadowed. On several occasions the Delaware courts have acknowledged that the landlord has the duty to maintain the premises. *Koutoufaris v. Dick*, Del.Supr., 604 A.2d 390, 401–02 (1992) (decided after the Board's decision); *but see also Phillip*, 593 A.2d at 586; *Ford*, 420 A.2d at 186; and *Brown*, 367 A.2d at 190. More to the point, there is nothing in the Landlord–Tenant Code which expressly authorizes the charging of a redecorating fee. Stoltz based its determination that the redecorating fee was permitted solely on the fact that it was not expressly forbidden by the Landlord–Tenant Code, even though the Landlord–Tenant Code imposed on the landlord the general duty of maintaining the rental unit.

The second *Chevron* factor involves consideration of whether retroactive application of the new principle of law would further or retard the operation of the new rule in view of its prior history. *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. As noted earlier, the primary purpose for the adoption of the Landlord–Tenant Code was to achieve a careful definition of reciprocal rights and obligations in order to prevent abuses. 58 *Del.Laws* Ch. 472. Requiring the costs of repairing damage caused by normal wear and tear to be borne by the landlord from rent proceeds will prevent landlord abuse and alleviate tenant confusion. Adoption of a rule requiring that the landlord adhere to the statutorily enumerated methods of securing payment from tenants results in a clearer and simpler law. Concededly, the retroactive application of a decision regarding the payment of funds in an existing contractual relationship may be viewed as having a punitive effect. But Stoltz's past practice in advertising its rental units at a stated rent that was lower than that actually required by its lease is equally injurious to the rights of its prospective tenants.

The final *Chevron* factor involves consideration of whether applying the decision retroactively will produce substantial inequitable results. *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. Stoltz made a decision to implement the redecorating fee notwithstanding the provisions and policies of the Landlord–Tenant Code, as discussed earli-

---

4. *Jardel Co., Inc. v. Hughes*, Del.Supr., 523 A.2d 518 (1987) (the Landlord–Tenant Code does not prevent a claim by tenant's employee against landlord for negligent providing of security when the landlord voluntarily undertook to provide security); *Staub v. Triangle Oil Company*, Del.Supr., 349 A.2d 209 (1975) (25 *Del.C.* § 5517 is not a penal statute and an action pursuant to its survives the death of the plaintiff); *McMahon v. New Castle Associates*, Del.Ch., 532 A.2d 601 (1987) (remedy of money damages for claim that landlord overcharged tenant for electricity in violation of the Landlord–Tenant Code is fully adequate under the circumstances); *Ford v. Ja–Sin*, Del.Super., 410 A.2d 184 (1980) (under the Landlord–Tenant Code landlord owes a duty to tenants as well as their social guests to maintain stairway in a safe condition); *Brown v. Robyn Realty Co.*, Del.Super., 367 A.2d 183 (1976) (cause of action for breach of duty by landlord in providing a defective or improper rental unit is allowed by Landlord–Tenant Code and the allegation was sufficient to state a cause of action).

er. Stoltz cannot claim reliance on decisional law since the law was, at best, unsettled. Nor can Stoltz complain that it must refund any money collected after the July 16, 1990 order of the Director, since a valid Cease and Desist Order was in effect as of that date. In effect, Stoltz is being required to refund money which it collected at its own risk. The equitable considerations weigh heavily in favor of applying the Board's decision retroactively.

 Stoltz raises for the first time in this Court the contention that the Director's authority was limited to the entry of Cease and Desist orders which by definition are prospective in application and the Board could only review such orders and not grant further relief. Aware that this Court will not hear questions not fairly presented to the trial court unless the interests of justice so require, Supr.Ct.Rule 8, Stoltz attempts to claim that the Board's alleged lack of jurisdiction should be considered in determining whether retroactive application would be equitable. The Board's power of review, however, authorizes it to "uphold, alter, amend or vacate" the Director's order. 29 *Del.C.* § 8824(b)(1). Stoltz's contention does not raise a jurisdiction claim but one of interpretation. We view the statute as conferring upon the Board the authority to impose any relief within its power, notwithstanding the Director's action.

Applying the *Chevron* test, we conclude that each of the factors supports: (1) the refund of all redecorating fees collected by Stoltz on or after July 16, 1990; and (2) the refund of those redecorating fees collected before July 16, 1990 under any lease which was in effect on July 16, 1990.

The judgment of the Superior Court is AFFIRMED.

## UPON MOTION FOR REARGUMENT

Stoltz has moved for reargument with respect to our ruling that it must refund redecorating fees as of July 16, 1990 for any tenant whose lease was in effect on that date. Stoltz contends that any retroactivity should be effective as of the date of the decision of the Consumer Affairs Board, February 14, 1991.

 Although there is some ambiguity in the Board's use of the term "current," the Board clearly intended to sustain the Cease and Desist Order of July 16, 1990 issued by the Director and to do so retroactively. When an administrative decision is affirmed or upheld, even after a review *de novo*, the decision is considered to be in effect from the date of the original order and not from the date of affirmation. 5B CJS *Appeal and Error* § 1857 (1958).

Moreover, to consider the Cease and Desist Order to be effective as of the date of the Board's order of affirmance would reward Stoltz for pursuing an appeal. The effect of such a holding would allow Stoltz to keep those redecorating fees collected before February 14, 1991 under any lease that was not in effect on February 14, 1991. This would include redecorating fees collected in violation of the Cease and Desist Order, *i.e.*, after July 16, 1990. The clear intention of the Board was to require refunds from the time when the Director of the Division of Consumer Affairs issued the Cease and Desist Order and to make the beneficiaries of that order all tenants whose leases were in effect on that date.

The motion for reargument is DENIED.