UNITED WATER DELAWARE, INC., a
Delaware corporation, Appellant
Below, Appellant,

v.

PUBLIC SERVICE COMMISSION of the
State of Delaware and Patricia Stowell
for the Division of the Public Advocate,
Appellees Below, Appellees.

No. 176, 1998.

Supreme Court of Delaware.

Submitted: Dec. 1, 1998.
Decided: Feb. 11, 1999.

William D. Bailey, Jr., The Bayard Firm,
P.A., Wilmington, Delaware, Gregory A. In-
skip (argued), Potter, Anderson & Corroon,
LLP, Wilmington, Delaware and of counsel
Walton F. Hill, United Water Management &
Services, Inc., Harrington Park, New Jersey,
for Appellant.

James McC. Geddes (argued) and Regina
A. Iorii, Ashby & Geddes, Wilmington, Dela-
ware, for Appellee Public Service Commis-
sion.

Patricia A. Stowell, Public Advocate, Division of Public Advocate, Wilmington, Delaware, for The Division of the Public Advocate.

Before WALSH, HOLLAND, and HARTNETT, Justices.

WALSH, Justice:

United Water Delaware, Inc. ("United Water"), a regulated utility engaged in the distribution of water in New Castle County, appeals from a decision of the Superior Court that, in turn, affirmed a ruling of the Public Service Commission of the State of Delaware (the "Commission") that denied, in part, an increase in rates sought by United Water. The sole claim of error relates to the Commission's determination of the capital structure of United Water. The Superior Court ruled that the Commission, in establishing a rate of return for United Water, correctly imputed to United Water the capital structure of its corporate "grandparent" rather than its corporate parent. We conclude, however, that the Commission's imputation of capital analysis is speculative and unsupported by substantial evidence. Accordingly, we reverse.

I

United Water is a wholly owned subsidiary of United Waterworks, Inc. ("Waterworks"). As the result of a 1994 merger, Waterworks became wholly owned by a holding company, United Water Resources, Inc. ("Resources"). Thus United Water has both a corporate parent and a corporate grandparent. In August, 1996, United Water filed a petition with the Commission seeking a change of rates based on a claimed revenue deficiency of approximately $4 million.

The Commission authorized the immediate implementation of a portion of the requested increase under bond and referred the underlying request to a Hearing Examiner. In making its revenue and expense projections, United Water used a test, or *pro forma*, year of twelve months ending March 31, 1996. The Hearing Examiner received extensive evidence concerning United Water's rate base, expenses, including the cost of capital, rate of return and revenue. The Hearing Examiner recommended a rate increase of approximately $1.5 million which was adopted, with minor modifications, by the Commission.

In its appeal to the Superior Court, United Water's principal contention was that the Commission erred in imputing to United Water the capital structure of its grandparent, Resources.[1] The Superior Court ruled that the issue of an appropriate capital structure presented "mixed questions of law, fact and regulatory policy." It concluded that the determination of an appropriate capital structure fell within "the Commission's expertise" and was supported by substantial evidence. Accordingly, the Superior Court declined to disturb the Commission's imputation of Resource's capital structure to United Water.

II

■ This Court's standard of review "mirrors that of the Superior Court." *Eastern Shore Natural Gas Co. v. Delaware Public Service Comm.*, Del.Supr., 637 A.2d 10, 15 (1994), *quoting Stoltz Management Co., Inc. v. Consumer Affairs Bd.*, Del.Supr., 616 A.2d 1205, 1208 (1992). When no evidence has been presented to the Superior Court other than what was presented to the administrative agency, this Court "directly examines the decision of the agency." *Stoltz*, 616 A.2d at 1208.

In the absence of actual fraud, this Court's review is limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency. 29 *Del.C.* § 10142(d);[2] *Delaware Alcoholic Beverage Control Comm. v. New-*

---

1. In its Superior Court appeal, United Water also challenged the Commission's findings with respect to depreciation, rate case expense and revenue changes relating to two large customers. United Water has appealed only from the Superior Court's affirmance of the Commission's capital structure determination.

2. The Public Service Commission is subject to the Administrative Procedures Act. 29 *Del.C.* § 10161(a)(3).

*some,* Del.Supr., 690 A.2d 906, 910 n. 4 (1996). When factual determinations are at issue, this Court shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. 29 *Del.C.* § 10142(d). "When the issue is one of agency interpretation of statutory law, and application of that law to undisputed facts, this Court's review of the agency's decision is plenary." *Eastern Shore,* 637 A.2d at 15.

■ United Water first claims that the Commission's determination of capital structure was "not a factual determination to which the Court should defer," and argues that the Commission's use of a "hypothetical capital structure must be 'demonstrably reasonable.'" This standard, it is argued, is particularly appropriate where, as here, the Commission has departed from its prior method of imputing Waterworks' capital structure. The Commission contends that United Water asked the Superior Court, and now this Court, to engage in a re-weighing of the evidence and the substitution of its judgment for that of the Commission in the fixing of an appropriate capital structure. Similarly, the Public Advocate, who intervened in support of the Commission's decision, responds that the Commission was free to use an entirely hypothetical capital structure, but in this case correctly chose a capital structure of a publicly traded company, Resources, as the ultimate source of capital for the utility.

■ Fixing rates "sufficient to yield a fair return to the utility upon the present value of the property dedicated to public use" is the primary objective of rate-making by the Commission. *Public Service Comm. of Delaware v. Wilmington Suburban Water Corp.,* Del.Supr., 467 A.2d 446, 447 (1983); *see* 26 *Del.C.* § 311. A utility secures a fair return when its revenues are "sufficient to pay operating expenses, to attract new investors, and to pay a fair return to the utility's existing investors." 467 A.2d at 447. To a certain extent, the Commission's task in fixing a fair rate of return is a mathematical/accounting exercise producing a dollar amount which is "the product of the rate base of the utility applied to the utility's rate of return, plus the utility's operating expenses." *Id.* at 447–48.

The rate of return is a percentage fixed by the Commission which is multiplied against the rate base to determine the fair return to the utility. There is no statutory provision delineating the method for calculating the rate of return. Historically, the Commission has employed the weighted average cost of capital approach which entails an examination of the capital components actually employed to finance the utility's plant, "*i.e.,* the presence of debt, preferred stock, common equity capital, etc." *Id.* at 448. The capital structure can affect the utility's ability to attract investors, once fixed by the Commission in a rate proceeding.

■ In proper circumstances the Commission may set a fair rate of return based upon a capital structure "as it should be rather than as it may actually exist." *In re Slaughter Beach Water Co.,* Del .Supr., 427 A.2d 893, 896 (1981). Since United Water, a wholly owned subsidiary, has no capital structure of its own, it concedes that the Commission may select, or impute to it, the capital structure of its owner. The nub of this dispute is whether that owner should be its corporate parent or its corporate grandparent.

United Water argues that, first the Commission, and then the Superior Court, improperly decided that Resources' capital structure rather than Waterworks' was to be employed to determine the rate of return. United Water claims that Waterworks' capital structure should have been utilized because: i) Waterworks furnishes the capital components actually employed to finance United Water's plant; and ii) Waterworks has a capital structure typical of publicly traded water companies.

Before the Commission, United Water presented expert evidence to the effect that its capital needs have been provided through its own retained earnings and by its parent, Waterworks, which borrows on the strength of its own credit in the financial markets. Resources, on the other hand, neither in the past nor during the test year, contributed either debt or equity financing to United Water. Prospectively, there is no evidence

that United Water's source of capital will change. The Commission offered no direct evidence to the contrary but argues that since only Resources stock is publicly traded the sole source for purchasing an equity interest in United Water is through the purchase of the stock of its grandparent, Resources. In short, the Commission opted to disregard the capital components actually employed to finance United Water's plant in favor of a going forward analysis of the ultimate source of capital. Since it is undisputed that Resources' financial experience is reflected on a consolidated balance sheet for all its subsidiaries, including United Water, the Commission recognized no distinction between United Water and its corporate grandparent.

The imputation of a capital structure in this matter is significant. As of March 31, 1996, the capital structure of United Water's parent, Waterworks, consisted of 53.65% long term debt, 0.19% minority interest and 46.16% common equity. On the same date, Resources capital structure reflected 52.00% long term debt, 5.23% short-term debt, 9.98% preferred stock and 32.79% common equity. Since Waterworks' equity is significantly higher than its parent, a greater revenue stream is required to provide a fair return on its equity. By attributing an implied rate of return on equity through Waterworks and directly to Resources, the Commission creates the anomaly that the rate of return on the equity actually employed in the enterprise will be 7.76% even though the Commission found that a fair return on equity in this rate proceeding was 10.75%, as part of a composite rate of return of 8.18%.

Both the Commission and the Superior Court justified the selection of the grandparent's, Resources, capital structure on the assumption that United Water's future financial needs will be met by Resources. But the record is devoid of evidence that this will occur and the mere change in corporate ownership through the 1994 realignment cannot, in itself, provide a basis for such an imputation. The Commission does not contend, and there is no evidence in the record to suggest, that United Water, Waterworks or Resources manipulated their respective capital

structure for rate-making purposes. *Cf. Bell Atlantic Washington, D.C., Inc. v. Public Service Comm. of District of Columbia*, D.C., 655 A.2d 1231, 1235 (1995) (manipulation of dividend payment ratios justified recasting of capital structure).

Resources is a diversified holding company and not all of its subsidiaries are public utilities. One of its subsidiaries is in the business of real estate management and, thus, its capital structure may not bear comparability to other operating water utilities. Indeed, other jurisdictions, in which water utilities operate as subsidiaries of Resources, have declined to impute its capital structure to those local utilities.

In the first reported decision to discuss the relationship between Resources and its regulated subsidiaries, the Pennsylvania Public Utility Commission cited four factors that influenced its determination that use of the parent's capital structure as opposed to the grandparent's structure was reasonable and appropriate. *Pennsylvania Public Utility Comm. v. United Water Pennsylvania, Inc.*, Pa.P.U.C., 184 P.U.R.4th 172, 194 (1998). First, the commission stressed that the only capital available to finance the rate base of the subject company was capital raised by the parent corporation. *Id.* Second, the commission noted that since the 1994 merger, no equity had "ever flowed" from the grandparent to the subject company. *Id.* Third, the commission found that "the use of debt levels supporting [the parent's] capital structure [were] fully consistent with industry standards." *Id.* Finally, the commission determined that the recommended equity ratios were the same as those of companies having comparable risk to the subject company. *Id.*

Subsequently, decisions from both Idaho and Virginia followed similar reasoning and reached the same conclusion. The Idaho Public Utilities Commission declined to follow its own earlier precedent in *In the Matter of the Application of United Water Idaho Inc. for Authority to Revise and Increase Rates and Charges for Water Service*, Idaho P.U.C., Case No. UWI–W–97–6, Order No. 27617, 1998 WL 417449 (July 6, 1998). The

Idaho commission cited two of six factors[3] that had been argued as supportive of the decision to utilize the parent's capital structure rather than the grandparent's. The commission found that the parent was the "entity that issue[d] the debt" for the subject company and that its capital structure was "currently within a reasonable range for utilities of comparable risk." Order at p. 39. Thus, the commission was persuaded to "mov[e] away from the hypothetical capital structure" of the grandparent used in a prior decision to the actual capital structure of the corporate parent. *Id.*

Lastly, the use of the parent's capital structure was held reasonable for purposes of establishing rates for another of Resources' subsidiary entities in *Desmond v. United Water Virginia, Inc.*, Va.Corp. Comm., Case No. PUE970544, Michael D. Thomas, Hearing Examiner, report at p. 26 (Sept. 30, 1998), *aff'd in pertinent part, Desmond v. United Water Virginia, Inc.*, Va. Corp.Comm., Case No. PUE970544 (Jan. 14, 1999). In reaching that conclusion, the hearing examiner emphasized that the record demonstrated that the utility received its external equity financing only from the parent, and that the grandparent had not infused any equity into the company, nor had plans to do so. *Id.* The hearing examiner noted that "[u]nlike [the parent's] capital structure, [the grandparent's] capital structure [might] not be comparable to a company whose only business is operating water utilities," because the grandparent was a diversified holding company. The examiner thus found that the parent's capital structure more accurately reflected the subject company's capital structure on a "going-forward basis." *Id.* at p. 25.

Although the Superior Court found the decision of the Pennsylvania P.U.C. not persuasive, we take the opposite view, particularly in the light of the subsequent rulings of two other state utility commissions, Virginia and Idaho[4] as noted above.

██ The Commission urges that, notwithstanding the rulings of other utility commissions we should defer to the expertise of the Delaware Commission in ruling upon matters within its purview. The Administrative Procedures Act does require that courts reviewing the rulings of administrative bodies "take due account of the experience and specialized competence of the agency" when reviewing factual determinations. 29 *Del.C.* § 10142(d). But, as this Court has noted in another context, an administrative agency may apply its institutional expertise in the evaluation of conflicting evidence but may not under that guise, create evidence. *Turbitt v. Blue Hen Lines, Inc.*, Del.Supr., 711 A.2d 1214, 1216 (1998). While we respect the Commission's expertise, its findings must, in all events, be supported by competent evidence, not supposition.

### III

██ The Commission argues that even if this Court should disapprove of the Commission's capital structure determination it should, nonetheless, affirm the Commission's ultimate ruling as long as the resulting rates are deemed "just and reasonable." In effect, the Commission contends that even if its methodology is flawed in the area of capital structure determination its decision may be upheld if the result is not confiscatory. The Commission's principal support for this argument is found in federal decisions interpret-

---

**3.** Those six factors were: i) the parent provided all of the external capital required by the subject company; ii) no equity capital had been injected into the parent by the grandparent since the merger; iii) the grandparent provided no financial guarantees, pledges, or any of its assets to any lender for the benefit of the parent; iv) no capital of the grandparent other than the parent could be used to finance the subject company's rate base; v) the parent capital structure ratios were reasonable as compared to a proxy group of five water companies represented as generally similar in risk to the subject company; and vi) the parent's capital structure ratios were consistent with those required by Standard & Poor's

for a water utility to maintain an A bond rating with an "average" business position, i.e., the business position of the parent. Order at p. 36–37.

**4.** The Superior Court favored the 1994 decision of the Idaho Public Service Commission in *Re Boise Water Corp.*, Idaho P.U.C., 153 P.U.R. 4th 320, 1994 WL 413167 (1994), but that ruling, to the extent it permitted imputation of Resources' capital structure to a local operating utility, was expressly repudiated by the Idaho Commission in its 1998 decision.

ing rulings of federal regulatory agencies. Those rulings do not control state law, however, and, indeed, run counter to the regulatory standards adopted by this Court.

In *Diamond State Telephone Co. v. Public Service Comm.*, Del.Supr., 367 A.2d 644, 647 (1976), this Court placed upon the Commission the burden of proving the reasonableness of the use of a hypothetical capital structure. Moreover, as we noted in *Eastern Shore*, if an agency departs from prior precedent or regulatory practice involving the same utility it must provide a rational explanation for the departure. 637 A.2d at 18. Here, the Commission departed from its previous treatment of United Water's capital structure based on its anticipation that Resources would be the source of future capital infusion. As previously noted, that assumption finds no support in the record beyond mere speculation. We decline to gauge the fairness of ultimate rates approved by the Commission on the basis of results when faced with a fundamental error in the calculation of the utility's rate base.

The judgment of the Superior Court is REVERSED and the matter REMANDED with direction that the Superior Court FURTHER REMAND this matter to the Commission for further proceedings consistent with this opinion.