# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

DAVID M. REISE,                                    )
                                                   )     Case No. CPU4-17-000965
    Plaintiff-Below, Appellant,        )
                                                   )
v.                                                 )
                                                   )
SETH ROSE, SEAN MILLER, LYNN                       )
BLUMENTHAL, ANDREW BURDACK,                        )
EVAN BLUMENTHAL, DANIEL MILLER,                    )
NANCY BURDACK, FRANK ROSE                          )
                                                   )
    Defendants-Below, Appellees.       )

Submitted:  January 2, 2019
Decided:    January 23, 2019

David M. Reise                          Frank H. Rose, Esquire (pro hac vice)
50 Gilbert Court                        Four Greentree Center
Newark, DE 19713                        601 Route 73 North, Suite 304
*Pro Se Plaintiff*                      Marlton, New Jersey 08053
                                        *Attorney for Appellees*

## DECISION AFTER TRIAL

Plaintiff-Below/Appellant, David M. Reise (hereinafter "Landlord"), appeals a Justice of the Peace Court 13 ("JP Court") Order dated February 23, 2017 pertaining to a landlord-tenant matter. Defendants-Below/Appellees, Seth Rose, Sean Miller, Andrew Burdack, Evan Blumenthal (hereinafter "Tenants"), and Frank Rose, Daniel Miller, Nancy Burdack, Lynn Blumenthal (hereinafter "Parents") counter-claim. In the court below, Landlord brought a debt action for unpaid rent and damages totaling $3,289.00 and the defendants counter-claimed for

1

damages totaling $17,360.00.[1] The JP Court Order being appealed granted Landlord relief in the amount of $1,249.50, which included $749.50 in past due rent and late fees and $500.00 in token damages. This resulted in a balance of $1,240.50 owed to the defendants from the $2,490.00 security deposit retained. The defendants were granted an award of $6,914.31, plus post-judgment interest at the rate of 6.25% per annum. Included in the defendants' award was compensation for a new stove, lack of hot water, lack of heat, inability to use the stove, and return of the balance of the security deposit.

This Court heard evidence from the parties during a two-day de novo trial held on December 19, 2018 and December 20, 2018. Present for trial were Plaintiff, Tenant Rose and Parent Rose.[2] The remaining six defendants were not in attendance. At the conclusion of trial, the Court took the matter under advisement. This is the Final Decision and Order of the Court.

## FACTS AND PROCEDURAL HISTORY

Tenants entered into a lease with Landlord for the rental of a residence located at 55 New London Road in Newark, Delaware. At that time, Tenants were students at the University of Delaware and the residence, typically rented by students, was one of many older homes located close to campus. The lease, which was executed on December 9, 2013, was for a one-year term beginning June 1, 2014 and ending May 28, 2015. Tenants were responsible for paying $2,490.00 in monthly rent plus a security deposit in the amount of one month's rent. The named parents are responsible for the lease as co-signers for their children's tenancy.[3]

---

[1] The jurisdictional limit in Justice of the Peace Court is $15,000.
[2] Parent, Frank H. Rose, a defendant in this case is a licensed attorney in the State of New Jersey. Delaware Counsel, John E. Sullivan, Esq., moved for Mr. Rose's admission pro hac vice in this matter. On August 24, 2017, Judge John Welch granted the motion.
[3] Pl.'s Ex. 2.

2

Tenant Rose, the only tenant present for trial, did not request to view the rental premises prior to executing the lease. Furthermore, Tenant Rose never requested to view the rental at any time prior to his arrival at the residence in July 2014, roughly one month after the commencement of the rental term. It is unclear when exactly keys to the premises were first obtained by Tenants.[4] It is also unclear whether Tenants were at their respective homes outside of Delaware during the initial summer months at the beginning of the lease. Parent Rose testified that Tenants were planning an official move-in during the third week of August 2014.[5] Landlord's video taken hours before the commencement of the lease term shows an older house, pained, cleaned,[6] and with no glaring code violations. The house was not a new pristine home, but was as would be expected for its age and use by student's year after year.

The defendants claimed that the house was dirty upon first visiting the premises in July 2014, the cause of which is undetermined. Parents compiled a list of issues they found at the home during this July visit and Parent Burdack contacted Landlord requesting the issues be remedied. Landlord responded to the premises to address founded issues and sent notice to the defendants informing them of the resolution. A series of service calls ensued to which Landlord responded.[7] Notable was a call by Tenants in late July 2014 requesting service for a potential gas leak associated with the kitchen stove. Landlord responded and concluded that a gas leak could not be the issue because the gas company had the main service, located outside the home, locked in a

---

[4] Landlord testified that keys were provided June 1, 2014 and students belongings were present prior to August, the month Tenants claim to have first moved in. Tenant Rose and Parent Rose testified that keys were first obtained in July during their first visit to the premises.

[5] Parent Rose, representing himself and other defendants pro hac vice, testified as the defense's main witness, despite not residing at the premises as a tenant and lacking first-hand knowledge of most events that took place. Tenant Rose was in essence asked if he agreed with everything that his father, Parent Rose, testified to. The Court finds this defense strategy unhelpful in determining the truth of the matters alleged.

[6] The carpets in the home appeared to be cleaned, but nonetheless permanently stained by prior tenants.

[7] Amidst other calls, Landlord was contacted regarding lack of hot water in late August 2014. Landlord resolved this issue by turning on valve.

closed position. Tenants later called Delmarva Power, who also found no gas issues upon inspection. Unbeknownst to Landlord, Parent Rose purchased a new stove for the premises without requesting permission to do so. Tenants later called the fire department after hearing a door to furnace blow open. The fire department found negative results on all meters. Sometime in late November or early December heat was not working on the second and third floors of the premises. Tenants called City of Newark Code Enforcement to report this issue. Witness, Ryan Straub, City of Newark Property Maintenance Inspector, (hereinafter "Code Inspector") responded to the residence on December 11, 2014. Code Inspector inspected the premises and found three violations: 1) bathroom sink faucet; 2) bathroom tub faucet; and 3) no heat on second and third floor. Code Enforcement also put a use restriction on the stove until confirmation was received that Delmarva Power's tests came back negative. Upon Code Inspector's arrival, Landlord was already working on the heat issue. After Code Inspector left the premises, he received a call from Landlord that the heat issue was corrected.[8] Code Enforcement also lifted the use restriction on the stove upon confirmation that Delmarva Power's tests revealed no gas issue.[9] A re-inspection took place the next day and all violations were corrected. Code Inspector testified that the house was old, but if anything else was found to be a threat to health and safety it would have been deemed a violation at that time. The defendants' requests for service continued for the remainder of the tenancy, some of which Landlord was responsible for maintaining, others of which Landlord was not responsible.

Upon move-out, Tenants left trash in the premises, holes and gouges in the walls, and damage to other parts of the residence. Admittedly, Tenants did not care for the lawn at any time

---

[8] It is notable that Code Inspector testified that his report, marked as Def.'s Ex. 7, lists only one violation of the tub faucet, as other violations had been remedied prior to Code Inspector writing the report.
[9] It is unclear how long this restriction had been in place.

4

during the term as agreed upon in the lease. The only tenant to provide Landlord with a forwarding address was Tenant Blumenthal. A security deposit letter was sent to Tenant Blumenthal and all Parents on June 15, 2015. Landlord received no letters disputing the alleged damages. Tenant Rose withheld payment of his portion of the last month's rent, requiring Landlord to seek relief by commencing an action in J.P. Court. Unsatisfied with the result in the court below, Landlord appealed to this Court for a trial de novo.

## PARTIES' CONTENTIONS

Landlord contends that Tenants are responsible for the unpaid portion of the last month's rent and the associated late fee, plus damages contained in the itemized list sent to Tenants upon move-out pursuant to 25 *Del. C.* § 5514.

The defendants deny responsibility for the delinquent rent and alleged damages and counterclaim based on: 1) Landlord's alleged failure to provide a copy of the Landlord-Tenant Code ("Code") to Tenants pursuant to 25 *Del. C.* § 5118, pleading ignorance of the law; 2) Landlord's alleged failure to fulfill his obligations pursuant to 25 *Del. C.* § 5305, requesting $1,000.00 in compensation for repairs; 3) Landlord's alleged willful or negligent deprivation of a substantial part of the benefit or enjoyment of Tenants' bargain pursuant to 25 *Del. C.* § 5306(c)(2), requesting one month's rent plus return of the security deposit totaling $5,120.00;[10] 4) Landlord's alleged failure to disclose the location of the security deposit pursuant to 25 *Del. C.* §5514, requesting double the amount of the security deposit totaling $5,120.00;[11] 5) Landlord's alleged entries into the premises without proper notice pursuant to 25 *Del. C.* § 5509, requesting $1,000.00; 6) Landlord's alleged attempt to forego Tenants' rights or remedies under the Code pursuant to 25

---

[10] Amount requested is inaccurately based on a rental amount of $2,560.00. The rental amount contained in the lease reflects $2,490.00, therefore, this figure should reflect $4,980.00.

[11] Amount requested is inaccurately based on a security deposit amount of $2,560.00. The security deposit total is $2,490.00, therefore, this figure should reflect $4,980.00.

5

*Del. C.* § 5301, requesting damages in the amount of three month's rent totaling $7,680.00.[12] Total damages sought by the defendants is $17,360.00.[13]

## DISCUSSION

Controlling in this case is the Delaware Residential Landlord-Tenant Code.[14] The "Code shall regulate and determine all legal rights, remedies and obligations of all parties and beneficiaries of any rental agreement."[15] Rental agreement provisions which conflict with the Code shall be unenforceable.[16] "The unenforceability shall not affect other provisions of the agreement which can be given effect without the void provision."[17]

### *Landlord's Claims*

Landlord requests compensation for the arrears of rent owed by Tenant Rose and the associated late fee. Pursuant to the rental agreement, Tenants agreed to pay $2,490.00 in monthly rent due on the first of the month or be subject to a late fee of five-percent of the monthly rent.[18] Such is permissible under 25 *Del. C.* § 5501. It was undisputed during trial that Tenant Rose withheld his rental contribution owed during the last month of his tenancy, therefore, Landlord is entitled to rent in the amount of $625.00, plus a five-percent late fee in the amount of $124.50.

As to damages, Landlord requests compensation in the amount of $2,539.50, in addition to the $2,490.00 security deposit retained. The Code establishes among other things that the purpose

---

[12] One month's rent totals $2.490.00, therefore, three month's rent should reflect $7,470.00.

[13] The defendants miscalculated their request, which should total $19,920.00. This amount must be reduced to reflect the accurate amount paid for the rent and security deposit, thus totaling an actual request of $19,430.00.

[14] 25 *Del. C.* Chs. 51-59.

[15] 25 *Del. C.* § 5101.

[16] *Id.*

[17] *Id.*

[18] At trial, Parent Rose argued that the rent for May 2015 should be prorated as it ended on the 28th rather than the 31st. There is no requirement for such under the Code. The lease agreement explicitly states that the lease end date is May 28, 2015, and the lease further states that a full month's rent is due for any 28-day period. Section 5501(c) does not require such end of term proration. 25 *Del. C.* § 5501(c). *See also Stoltz Mgmt. Co., Inc. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1210 (Del. 1992) (charging a separate non-refundable fee in addition to rent is not permissible under Section 5501(c)).

of the security deposit is to "reimburse the landlord for actual damages caused to the premises by the tenant which exceed normal wear and tear, or which cannot be corrected by painting and ordinary cleaning."[19] "Within 20 days after termination or expiration of any rental agreement, the landlord shall provide the tenant with an itemized list of damages to the premises and the estimated costs of repair for each."[20] Tenants' failure to object in writing to the landlord's list of damages will constitute agreement to the damages outlined by landlord.[21] Such notices by the landlord shall be sent to the tenants at an address specified in the rental agreement or a forwarding address provided by the tenant by the time the rental agreement is terminated.[22] Failure of tenants to provide a forwarding address relieves a landlord of this notice requirement and liability under this section.[23]

Landlord compiled an itemized list of damages which includes services completed during the tenancy and damages discovered upon inspection at the end of the lease term. Tenant, Evan Blumenthal, was the only tenant to provide Landlord with a forwarding address. The list, which was attached to a letter, was sent to the parties on June 15, 2015, which was within the twenty-day period prescribed by Section 5514.[24] Notice was properly provided to Parents at addresses provided on their co-signer forms at the beginning of the tenancy and Evan Blumenthal at his forwarding address. Remaining Tenants' failure to provide forwarding addresses to Landlord relieved Landlord from responsibility to those tenants under the Code. No objection was sent by Tenants or Parents to Landlord within the required ten-day period, thus constituting agreement with the alleged damages.

---

[19] 25 *Del. C.* § 5514(c)(1).
[20] 25 *Del. C.* §5514(f).
[21] *Id.*
[22] 25 *Del. C.* § 5514(h).
[23] *Id.*
[24] Pl.'s Ex. 5A. Additionally, on May 11, 2015, seventeen days before the end of the lease term, Landlord provided Parents with a letter outlining Landlord's responsibilities under Section 5514(f). Pl.'s Ex. 22.

Most of the controversy between the parties center around the damages to the premises. The Court has been tasked with evaluating numerous exhibits, determining the responsibility of the parties under the lease agreement and determining the validity of the lease terms under the Code. Section 5513 outlines a variety of permissible remedies landlords have available to them in the event a tenant breaches a material rule or covenant in the rental agreement. Section 5513(a)(2) provides, "If the tenant's breach can be remedied by the landlord, as by cleaning, repairing, replacing a damaged item or the like, the landlord *may* so remedy the tenant's breach and bill the tenant for the actual and reasonable costs of such remedy. Such billing shall be due and payable as additional rent, immediately upon receipt."[25] The lease executed by the parties sets forth under paragraph 14, titled "Additional Tenant Responsibilities," "Should Tenant fail to perform these responsibilities, the Landlord without notice, may perform these responsibilities and *bill Tenant* the cost of the same, which payment shall be due five (5) days from the date of the bill *or be deducted from any deposits.*"[26] The lease seems to contemplate the billing provision provided by Section 5513(a)(2), but adds the option to deduct from the security deposit. Section 5514 provides no indication that other methods of billing are precluded where the parties have agreed upon such in their lease, therefore, leaving open the possibility of deducting the damages from the security deposit.

An issue for Landlord is that some of the charges are not compensable under Section 5514(c)(1). Landlord is only permitted to bill for damages that exceed normal wear and tear or which cannot be corrected by paint or ordinary cleaning.[27] Additionally, Landlord must "[m]ake all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto

---

[25] 25 *Del. C.* §5513(a)(2) (emphasis added).
[26] Pl.'s Ex. 1.
[27] 25 *Del. C.* § 5514(c)(1).

8

in as good a condition as they were, or ought by law or agreement[28] to have been, at the commencement of the tenancy."[29]  Lastly, Landlord cannot bill for preexisting conditions to the premises not caused by the defendants.[30]  Given that the damages list is six and one half pages long, it would be too cumbersome to detail each issue listed.  Generally speaking, the Court does not find that Landlord has acted intentionally in including the impermissible charges.  Rather, it is the Court's impression that Landlord's recordkeeping as to this premises became overwhelmed and unorganized given the deterioration of the relationship between the parties and the frequency of the calls made to Landlord by the defendants.  The Court finds that Landlord was responsive and prompt in addressing requests made by the defendants and he shall be compensated for the damages where the law allows.

Another dispute in the billing of damages was the Landlord's use of an hourly rate rather than the mere value of the damaged item.  Section 5513(a)(2) says that where a landlord can clean, repair, or replace a damaged item, Landlord may bill "for the actual and reasonable costs of such remedy."  What Landlord had done was bill simply for his time in servicing the damage, rather than the cost of the product.  Landlord explained that since he is in the business of owning multiple rental properties, he has an inventory of extra household items.  Therefore, Landlord does not always need to go to the hardware store to replace a broken item in the premises, and thus does not have a receipt.  The defendants argued that actual costs include parts only and not Landlord's time or hourly rate.  In using the terms "actual and reasonable costs" the Code does not preclude reasonable hourly rates.  "Actual [c]ost means the actual cost incurred to provide the relevant

---

[28] The lease explicitly states, "This Premises is rented in "AS IS" condition at the time of execution of this Lease."
[29] 25 *Del. C.* § 5305(a)(4).
[30] As noted by the Court during trial, the photos and video show damage to the mailbox at the beginning of the lease term prior to possession by Tenants.

9

goods or *services*, including the cost of *direct labor* and direct material used."[31] Additionally, the lease, signed by Tenants, explicitly states that Tenants will be billed at an hourly rate of $35 an hour. So long as the rate is reasonable, Landlord should be compensated for his trouble. Although such an evaluation can be burdensome, especially in a case with lengthy damages such as this one, it is just to do so. It would be unreasonable to find that the Code meant to promote highly disproportionate and unjust outcomes. Choosing to simply not provide Landlord with sufficient compensation where the law allows would go against what the Code was meant to achieve, given that Landlord's premises was completely trashed by Tenants upon move-out.

In accordance with the aforementioned Code provisions, Landlord proved by preponderance of the evidence that he is entitled to the following damages: 1) change of locks on five doors due to Tenants failure to return all keys to Landlord at the end of lease term, totaling $175.00;[32] 2) lawn maintenance services for entire tenancy which was the responsibility of Tenants under the lease, totaling $385.00;[33] 3) replacement of battery in smoke alarm,[34] additional cleaning of refrigerator almost two months after lease began,[35] extermination services,[36] repeated rear entry lock replacements caused by forced entry,[37] and placement of plastic over windows at Tenants' request while heat was operable in the house,[38]all of which were Tenants' responsibilities under

---

[31] Law Insider, https://www.lawinsider.com/dictionary/actual-cost (last visited Jan. 22, 2019) (emphasis added).

[32] Lock change is appropriate where keys are not returned and safety of future tenants is a concern. *See* 25 *Del. C.* §5715(h). One hour per lock at $35 per hour is well below the cost of professional replacement services and hardware.

[33] The neglect of the lawn, which consisted of large amounts of bamboo, caused by Tenants would have costed well beyond this figure if Landlord had hired a lawn care company given the amount of labor required and risk of damage to lawn care equipment. This amount includes service for the summer of 2014 and spring of 2015.

[34] Pl.'s Ex. 1 ¶ 14. Charge is only for 15 minutes, totaling $8.75.

[35] Pl.'s Ex. 1 ¶ 14. Charge is only for 15 minutes, totaling $8.75.

[36] Pl.'s Ex. 1 ¶ 14. Charge is for 1 hour on two occasions, totaling $70.00.

[37] Pl.'s Ex. 1 ¶ 13(C). Charge is for 3 hours and 15 minutes total for service on two occasions, totaling $113.75.

[38] Landlord is not required to perform handyman services which are not required by him under the Code or agreed to in the lease. The defendants did not prove that heat was not working at any point after it was made operable by Landlord on December 11, 2014, which would have warranted Landlord to remedy the situation. Charge is for 4 hours and 15 minutes, totaling 148.75, which includes the cost of the plastic film and heat gun.

the lease or Code; 4) damage to the premises upon move out consisting of broken porch window,[39] broken porch light switch panel,[40] inoperable hall light,[41] broken living room light fixture,[42] hole in living room wall that Tenants insufficiently patched,[43] stairway ceiling damage,[44] bedroom door damaged by Tenants' installation of deadbolt which was removed by Tenants at end of term,[45] removal and disposal of a bed which was left behind by Tenants and too large to remove in one piece,[46] bath towel rod ripped out of wall,[47] and a broken wash cloth ring.[48] There are numerous other damages which cannot be quantified by the evidence such as: 1) wall damage beyond what can be remedied by paint;[49] and 2) extensive cleaning exceeding that of an ordinary cleaning. It was clear by the evidence that Tenants abused the premises and left Landlord with a significant amount of work in order to restore the premises to the condition it was at the beginning of the lease term. For that reason, the Court will grant Landlord nominal damages in the amount of $500.00. Landlord is entitled to a total of $1,905.00 in damages to the premises, plus $749.50 in rent and late fees, totaling $2,654.50. Since Landlord has withheld the $2,490.00 security deposit, the defendants will owe the remaining balance of $164.50.

---

[39] Charge is for 1 hour and 15 minutes, totaling $43.75.
[40] Charge is for 30 minutes, totaling $17.50, which will be reasonably reduced to fifteen minutes, totaling $8.75.
[41] Charge is for 15 minutes, totaling $8.75.
[42] Charge is for 1 hour, totaling $35.00. Tenant Rose admitted that a guest broke the living room light.
[43] Charge is for 4 hours, totaling $140.00. The Court acknowledges this is labor intensive, but including the drying time is not reasonable. The charge will be reasonably reduced to $75.00.
[44] Charge is for 2 hours, totaling $70.00.
[45] Charge is for 4 hours, totaling $140.00.
[46] Charge is for 2 hours, totaling $70.00.
[47] Charge is for 45 minutes, totaling $26.25.
[48] Charge is for 30 minutes, totaling $17.50.
[49] There is clear damage to the walls in numerous places which cannot be quantified due to Landlord grouping them together with non-compensable markings and one lump sum representing the cost.

*The Defendants' Counterclaims*

As to Count I, the defendants assert ignorance of the law as a defense due to Landlord's alleged failure to provide them a copy of the Code as required by Section 5118. The lease conspicuously and in no uncertain terms states immediately above Tenants' signatures that Tenants acknowledge receipt of the Landlord-Tenant Code. Parties to a contract are presumed to have read what they have signed. Landlord needs not submit a copy of the Code as evidence that he provided the Code to Tenants as Parent Rose argues he should have. A mere copy of the Code would not be helpful in determining Tenants' receipt. The defendants' defense fails.[50]

As to Count II, the defendants claim Landlord violated obligations under Sections 5305 and 5303 by failing to provide heat, hot water, a safely working stove and other necessary repairs, including front door locks, rear door lighting, and removal of carpets. The defendants assert that such entitles them to $1,000.00 in damages, justifying Tenant Rose's lack of payment for the last month's rent. As to heat, Landlord denied receiving any notification of a heat issue prior the defendants' complaint to City of Newark Code Enforcement.[51] No evidence of Landlord's knowledge of the heat issue was presented to the contrary. Landlord remedied the heat the same day that he learned of the problem, which was the same day code enforcement officers inspected the premises. As to hot water, the defendants claim that hot water was not working upon move-in. Sufficient evidence of notice to Landlord was not provided to the Court. Landlord's testimony and ledger of events marked as Exhibit P15 reveal that Landlord was made aware of the hot water issue on August 25, 2014 and remedied the issue the same day by turning the knob to the on position. As to the stove which was suspected of leaking gas, the testimony of the parties conflicts

---

[50] It is curious that ignorance of the law is being asserted by Parent Rose, a practicing New Jersey attorney who has access to and knowledge of the legal system and is representing himself and other defendants in this case.

[51] Tenant Rose testified that he has no evidence other than his testimony to show that Landlord was notified of the lack of heat prior to the code enforcement inspection.

as to their opinion of the stove. Photos show that the gas stove was certainly an older model, but an older model stove is not sufficient to render it a violation of the Code. Tenants contacted Landlord,[52] the fire department, and Delmarva Power regarding a smell of gas they believed was emanating from the stove. All parties concluded that there was no gas issue. Parent Rose testified that upon replacing the existing stove with a new one, the alleged smell of gas persisted. Therefore, the Court concludes that the replacement of the stove was unwarranted and without Landlord's permission, and therefore, the defendants are not entitled to compensation. As to the remaining repairs, upon receipt of the defendant's list of complaints in August 2014, Landlord promptly addressed the issues complained of and sent confirmation to the defendants confirming this. The defendants failed to respond to Landlord objecting to the alleged completion of the work requested. It is the Court's impression that Tenants were excited to live in off-campus housing[53] and problems began when Parents discovered that their children would be living in an older house that they personally would not have bargained for. The defendants are not entitled to recover damages under this section as Landlord promptly addressed issues known to him and supplied the rental unit Tenants bargained for.[54]

As to Count III, the defendants request additional technical damages permitted by Section 5306 for the alleged violation of Section 5305 as set forth in Count II. For the aforementioned reasons, the Court does not find that Landlord violated Section 5305 and therefore, recovery under Section 5306 is not proper.

---

[52] Landlord testified as to his inspection on July 25, 2014 when he discovered that the gas meter was locked by the power company in the off position.

[53] Parent Rose testified that his son, Tenant Seth, thought it was a great place, but Parent Rose, being a parent and a 58-year-old man who has lived a reasonable and comfortable life, did not share his son's view of the premises.

[54] Later dissatisfaction by Tenants' parents does not render the agreement entered into by Tenants and parents null and void. Tenants have a responsibility to request an inspection of the premises before signing a lease. Tenants failure to do so does not become Landlord's burden.

As to Count IV, the defendants allege that Landlord failed to provide them with the location of the security deposit upon request as required by the Code, entitling the defendants to double the amount of the security deposit. The defendants submitted three letters to the Court allegedly showing their attempts at requesting the security deposit. Landlord denies any knowledge of the first two letters and the defendant's failed to prove mailing. The last of the letters, dated May 1, 2015, was responded to by Landlord on May 11, 2015, in compliance with Section 5514's 20-day requirement. Therefore, recovery is not proper under this section.

As to Count V, the defendants allege Landlord violated Section 5509 by not providing them with proper notice prior to entry onto the premises, entitling them to $1,000.00 in damages. Tenant Rose testified that he was not aware of times when the other Tenants and Parents may have requested Landlord's services, therefore, the Court cannot conclude that Landlord violated this provision of the Code.

As to Count VI, the defendants rely on the arguments of the aforementioned counts of the counter-complaint to argue they are entitled to triple the amount of one-month's rent under Section 5301(b). In addition to the Court's determination that Landlord has not violated the previously mentioned sections of the Code, Section 5301(b) requires that the claimant show that landlord is attempting "to enforce provisions of a rental agreement known by the landlord to be prohibited by subsection (a)." The defendants have failed to identify provisions of the lease which violate this provision, and therefore, are not entitled to damages under this section.

As to Count VII, wherein the defendants demand judgment in the amount of $17,360.00, the Court denies this demand in totality. The parties each allege that termination of the rental agreement was not favorable given the lack of alternatives, but such does not entitle either party to a windfall of damages. The defendants are not entitled to recovery under their counter-

14

complaint and owe a balance of $164.50 to Landlord for damages, plus court costs, plus post-judgment interest at the legal rate.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 23rd day of January, 2019, that Appellant is entitled to damages totaling $164.50, plus court costs, plus post judgment interest, as well as the right to retain the security deposit totaling $2,490.00.

The Honorable Carl C. Danberg
Judge

cc:     Patricia Thomas, Judicial Case Manager

15