# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KEEP OUR WELLS CLEAN, GAIL SALOMON, EUGENIA GRACE NAVITSKI, VLAD ERIC NAVITSKI, THOMAS DIORIO, LYNN TAYLOR-MILLER, CHARLIE MILLER, and VIRGINIA WEEKS, | § § § § § § § § | No. 138, 2020<br><br>Court Below: Superior Court of the State of Delaware |
| Plaintiffs Below, Appellants, | § § § | C.A. No. S19A-07-002 |
| v. | § § | |
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, and ARTESIAN WASTEWATER, MANAGEMENT, INC., | § § § § § § § | |
| Defendants Below, Appellees. | § § § | |

Submitted: October 7, 2020
Decided: December 15, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Kenneth T. Kristl, Esquire (*argued*), Environmental & Natural Resources Law Clinic, Widener University Delaware Law School, Wilmington, Delaware; *Attorney for Plaintiffs-Appellants Keep Our Wells Clean, Gail Salomon, Eugenia Grace Navitski, Vlad Eric Navitski, Thomas DiOrio, Lynn Taylor-Miller, Charlie Miller, and Virginia Weeks*.

Devera B. Scott, Esquire, and Kayli H. Spialter, Esquire (*argued*), Department of Justice, Dover, Delaware; *Attorneys for Defendant-Appellee Delaware Department of Natural Resources and Environmental Control*.

R. Judson Scaggs, Jr., Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Defendant-Appellee Artesian Wastewater Management, Inc.*

**SEITZ**, Chief Justice:

Before 2014, the Delaware Department of Natural Resources and Environmental Control reviewed wastewater treatment facility construction permit applications under regulations adopted in 1999. In 2014, DNREC revised its regulations and adopted new requirements. In this appeal, we address whether Artesian Wastewater Management, Inc.'s 2017 construction permit application, which Artesian characterizes as an amendment to its existing 2013 wastewater treatment facility construction permit, must comply with the new requirements of the 2014 regulations. The Environmental Appeals Board and the Superior Court decided Artesian did not have to comply with the new requirements. We agree and affirm.

I.

To build and operate a wastewater treatment facility in Delaware, a developer must secure two permits—one to construct and another to operate the facility. On October 5, 2013, DNREC granted Artesian a construction permit for Phase I of the Artesian Northern Sussex Regional Water Recharge Facility in Sussex County, Delaware ("Sussex Facility").[1] Like other Delaware wastewater treatment facilities, Artesian expected that the Sussex Facility would be used to treat domestic wastewater from a proposed housing development in Milton with the option to

---

[1] Unless otherwise stated, the facts are drawn from the Superior Court's Opinion, *Keep Our Wells Clean v. Dep't of Nat. Res. & Envtl. Control*, C.A. No. S19A-07-002-ESB, 2020 WL 1320954 (Del. Super. Ct. Mar. 19, 2020).

service other wastewater needs in the region. Artesian planned to collect and treat effluent at the Sussex Facility and then spray the treated wastewater on privately-owned agricultural land. The Sussex Facility would be constructed in three phases with the final facility composed of a wastewater treatment plant with a 3 million gallon per day capacity, storage ponds, and a spray operation on agricultural land. Under Phase I of the construction, Artesian planned to build two storage ponds with a 62 million gallon storage capacity, 608.9 acres of spray fields, and a wastewater treatment plant to process up to 1 million gallons a day. As part of its 2013 permit application, Artesian submitted hydrogeologic and soil investigation reports as required by regulations adopted in 1999 (the "1999 Regulations"). DNREC evaluated and approved the Phase I construction permit under the 1999 Regulations (the "2013 Permit").

With the 2013 Permit in hand, Artesian started construction of the Sussex Facility. The Milton housing development, however, never materialized. To salvage the project, Artesian contracted with Allen Harim Foods, which owns a chicken processing plant in Sussex County, to use the plant's treated food processing wastewater for the spray irrigation. On May 10, 2017, Artesian filed another permit application to construct a wastewater treatment facility ("2017 Permit Application"). The 2017 Permit Application along with an amended design development report included the following changes to the existing Phase I construction: (1) moving

wastewater treatment plant construction from Phase I to Phase II; (2) increasing the estimated treatment capacity from 1 million gallons of domestic wastewater per day to 1.5-2 million gallons per day; (3) building one 90 million gallon storage pond rather than two 62 million gallon ponds; and (4) increasing the spray area from 608.9 acres to 762.7 acres out of the 1,700 acres of agricultural land leased for spray irrigation.

In between 2013 when DNREC issued the 2013 Permit and 2017 when Artesian submitted its 2017 Permit Application, DNREC adopted new wastewater regulations ("2014 Regulations").[2]  Under the 2014 Regulations, in addition to the hydrogeologic and soil investigation reports required by the 1999 Regulations, permit applicants must submit a Hydrogeologic Suitability Report ("HSR") and a Surface Water Assessment Report ("SWAR") before DNREC will review a construction permit application.[3]  Artesian's 2017 Permit Application did not include an HSR or SWAR.

DNREC reviewed Artesian's 2017 Permit Application and found it administratively complete—meaning it contained all the required submissions and

---

[2] Regulations Governing the Design, Installation, and Operation of On-Site Wastewater Treatment and Disposal Systems, 7 *Del. Admin. Code* § 7101.

[3] 7 *Del. Admin. Code* § 7101-6.5 ("A permit application will not be reviewed by the Department until the SIR, HSR and SWAR have been reviewed and approved by the Department.").  An HSR report "characterizes the hydrogeologic properties present on a given site through direct observations."  *Id*. at § 7101-2.0.  An SWAR "characterizes the potential nutrient impacts of a wastewater treatment system to a site from future development through background data and computer modeling."  *Id.*

was ready for review—even though it did not contain an HSR and SWAR. After a public hearing and public comment period, and favorable recommendation from a Hearing Officer, the DNREC Secretary approved the 2017 Permit Application and directed that the permit be issued (the "2017 Permit"). According to the Secretary, the Sussex Facility must meet the highest criteria for spray irrigation, and the changes to the number and capacity of the ponds, the sprayable acreage, and project phasing were reasonable adjustments to the 2013 Permit.[4] In response to public objections that Artesian's application was not administratively complete for failing to include an HSR and SWAR, the Secretary treated the 2017 Permit Application as an amendment to Artesian's 2013 Permit instead of a new permit "because the 2013 Permit remains in effect."[5]

Appellants Keep Our Wells Clean ("KOWC") appealed the Secretary's 2017 Permit approval to the Environmental Appeals Board ("EAB").[6] The issues included whether DNREC should have denied the 2017 Permit because Artesian failed to submit an HSR and SWAR as required by the 2014 Regulations.[7] The EAB held hearings on May 22, 2018 and March 12, 2019. At the second hearing, the

---

[4] App. to Opening Br. A074, A078 (Secretary's Order No. 2017-W-0029, at 7, 11).
[5] App. to Opening Br. at A071 (Secretary's Order No. 2017-W-0029, at 4).
[6] Under 7 *Del. C.* § 6008(a), a person whose interests are substantially affected the Secretary's action may appeal to the EAB within 20 days of the Secretary's order.
[7] KOWC raised other objections before the EAB but have not pursued them on appeal.

6

Board heard from John G. Hayes, Jr., DNREC's Program Manager for the Large Systems Branch, Ground Water Discharge Section. Mr. Hayes testified that he:

> (1) was familiar with [the Sussex Facility] as originally approved and with the proposed amendments to the [2013 Permit]; (2) was familiar with the 2014 Regulations; (3) knew that no HSR [or] SWAR had been filed with the amended application; (4) believed that only a *new* application required an HSR and SWAR; (5) believed that an existing permit could be amended; (6) believed that the proposed changes to the construction permit were not significant enough to require a new application; (7) believed that the site was still suitable for the disposal of treated wastewater; [and] (8) believed that Artesian had submitted everything it was obligated to submit . . . .[8]

KOWC called Christopher P. Grobbel, Ph.D., an expert in hydrology and hydrogeology. During Dr. Grobbel's testimony, Artesian objected on the grounds that his testimony dealt with operational issues rather than those for a construction permit and thus exceeded the relevant issues being heard by the EAB. DNREC moved to cut off Dr. Grobbel's testimony and for a directed verdict that Artesian did not have to submit an HSR and SWAR with its 2017 Permit Application. After hearing argument, the Board voted 6-0 to affirm the Secretary's order granting the 2017 Permit.

In a June 10, 2019 written decision and final order, the EAB made the following findings relevant to this appeal:

> The Board agrees with DNREC and Artesian's contention that, as a matter of law, the 2014 regulations do not apply to the amendment to the existing construction permit. DNREC concluded that a permit

---

[8] *Keep Our Wells Clean*, 2020 WL 1320954, at *3.

7

amendment is subject to the regulations that were in effect at the time of the initial permit application unless the changes are significant. In this case DNREC determined the changes are not significant enough to require the applicant to submit a new permit application. DNREC's determination is not clearly wrong.

The Board agrees with Artesian's contention, and finds as a matter of law, that it submitted the required plan, specifications and design engineer report contemplated by [the Regulations].[9]

KOWC appealed the EAB's decision to the Superior Court. The court described the main issue on appeal as whether "DNREC correctly processed amendments to a 2013 construction permit that was approved under the 1999 Regulations where those amendments are now governed by – at least to some extent – the 2014 Regulations."[10] The Superior Court focused on three sections of the 2014 Regulations: Section 6.1, which requires that an applicant "obtain" a permit from DNREC prior to beginning construction or operation of any on-site wastewater treatment facility;[11] Section 6.5, which requires an HSR and SWAR as part of a

_____

[9] EAB Order, at 12. The EAB's order makes reference to Section 6.3.1.1.14., rather than 6.3.1.14.1. The Superior Court and the parties agree that this is a typographical error. *Keep Our Wells Clean*, 2020 WL 1320954, at *5 n.11; Opening Br. at 12; Artesian Answering Br. at 15.
[10] *Keep Our Wells Clean*, 2020 WL 1320954, at *5.
[11] 7 *Del. Admin. Code* § 7101-6.1 ("A permit must be obtained from the Department prior to the construction, operation, maintenance or repair of any on-site wastewater treatment and disposal systems with daily design flow rates of ≥ 2,500 gallons.").

8

construction permit application;[12] and Section 6.3.1.14.1, which covers construction permit changes.[13]

First, the court held that Sections 6.1 and 6.5 only apply when an applicant requests a new permit. Here, according to the court, Artesian already had the 2013 Permit, and sought to "amend" an existing permit. Second, the court found that the EAB correctly applied Section 6.3.1.14.1 because that section "by its clear language, allows Artesian to seek an amendment to its existing construction permit" when "changes have occurred."[14] Although the 2014 Regulations did not address when the changes to an existing permit were substantial enough to require a new construction permit application, the Superior Court found that DNREC properly exercised its regulatory discretion when it found that Artesian's proposed changes were not substantial enough to require further hydrogeologic and soil studies. Thus, the Superior Court upheld the EAB's decision.

II.

We can distill the issues on appeal to two main points—whether the EAB erred when it supposedly found that the 2014 regulations do not apply to Artesian's

---

[12] 7 *Del. Admin. Code* § 7101-6.5 ("In order to obtain a permit . . . a permit application must be submitted to the Department for review and approval. A permit application will not be reviewed by the Department until the SIR, HSR and SWAR have been reviewed and approved by the Department.").

[13] 7 *Del. Admin. Code* § 7101-6.3.1.14.1 ("A construction permit application, plans and specifications and design engineer report with applicable fees must be submitted to the Department if the construction permit has expired or changes have occurred.").

[14] *Keep Our Wells Clean*, 2020 WL 1320954, at *6.

2017 Permit Application; and if the 2014 Regulations are applied, whether those regulations required Artesian to submit an HSR and SWAR with its 2017 Permit Application. Our review of the EAB's decision matches that of the Superior Court– whether the decision is supported by substantial evidence and is free from legal error.[15] "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."[16] It is more than a "mere scintilla but less than a preponderance of the evidence."[17]

### A.

As noted earlier, the EAB found that, "as a matter of law, the 2014 regulations do not apply to the amendment to the existing construction permit."[18] KOWC argues the EAB erred because the 2014 Regulations apply to all aspects of wastewater treatment facilities, and "supersede and replace" the 1999 Regulations.[19] If DNREC applied the 2014 Regulations, KOWC argues, Sections 6.1 and 6.5 required that Artesian submit a HSR and SWAR with its 2017 Permit Application.

We agree with the Superior Court, however, that what the EAB wrote must be viewed in context. In its decision, the EAB expressly and impliedly made two

---

[15] *State of Del. Dep't of Nat. Res. & Envtl. Control v. McGinnis Auto & Mobile Home Salvage*, 225 A.3d 1251, 1254 (Del. 2020) (citing *Stoltz Mgmt. Co. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del. 1992)).

[16] *Prunchkun v. Del. Dep't of Heath & Soc. Servs.*, 201 A.3d 525, 540 (Del. 2019).

[17] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019).

[18] App. to Opening Br. at A579 (EAB Order, at 12).

[19] 7 *Del. Admin. Code* § 7101-1.2.1; § 7101-1.3.

10

points—first, Section 6.3.1.14.1 of the 2014 Regulations applied to Artesian's 2017 Permit Application, and second, Artesian was excused from submitting a HSR and SWAR under Section 6.3.1.14.1 because the Artesian's proposed changes to its 2013 Permit were not substantial enough to warrant a new application with a HSR and SWAR. Our conclusion is confirmed when the one sentence KOWC isolates is read in the context of the rest of the paragraph in the EAB's Order. In the follow-on sentences, the EAB elaborated that:

> DNREC concluded that a permit amendment is subject to the regulations that were in effect at the time of the initial permit application unless the changes are significant. In this case DNREC determined the changes are not significant enough to require the applicant to submit a new permit application. DNREC's determination is not clearly wrong.[20]

As these sentences show, the EAB was referring to the substance of Section 6.3.1.14.1 of the 2014 Regulations. Section 6.3.1.14.1 of the 2014 Regulations addresses "changes" in construction plans. Applying the 2014 Regulations, the EAB found that the proposed "changes" to Artesian's 2013 construction plans were not substantial enough to require an HSR and SWAR under the 2014 Regulations. Thus, having actually applied Section 6.3.1.14.1 of the 2014 Regulations to Artesian's

---

[20] App. to Opening Br. at A579 (EAB Order, at 12).

11

2017 Permit Application, EAB did not err as a matter of law by failing to apply the 2014 Regulations.[21]

B.

Our conclusion that the EAB applied Section 6.3.1.14.1 of the 2014 Regulations to Artesian's 2017 Permit Application leads to the second issue on appeal—whether the EAB erred when it held that, under Section 6.3.1.14.1, Artesian was amending its 2013 Permit, and the proposed changes to the 2013 Permit were not substantial enough to require an HSR and SWAR.

Section 6.3.1.14.1, entitled Construction Permit, provides as follows:

> A construction permit application, plans and specifications and design engineer report with applicable fees must be submitted to the Department if the construction permit has expired or changes have occurred.

The Superior Court held that Section 6.3.1.14.1, "by its clear language, allows Artesian to seek an amendment to its existing construction permit."[22] KOWC counters that the regulation does not mention amendments to existing permits.[23] It requires a "construction permit application" and not an amended application if a permit has expired or changes occur. And, under Sections 6.1 and 6.5 of the 2014

---

[21] Because the EAB did not err as a matter of law, we need not address KOWC's alternative argument that the EAB erred as a matter of fact by failing to apply the 2014 Regulations.
[22] *Keep Our Wells Clean*, 2020 WL 1320954, at *6.
[23] Opening Br. at 29.

12

Regulations, all construction permit applications must have an HSR and SWAR. KOWC also calls our attention to Section 6.5.3.3.1, which addresses amendments to operating permits.[24] A comparable amendment provision is absent for construction permits.

Section 6.3.1.14.1 is not altogether clear when applied to holders of existing wastewater facility construction permits issued before the 2014 Regulations. The Section does not expressly provide for amending an existing permit. Instead, it requires the holder of an existing permit to file another permit application if the permit has expired or changes have occurred. Artesian filed another permit application and related planning documents, which KOWC argues is a concession that "changes have occurred."

Practically speaking, the EAB and the Superior Court correctly described what Artesian wanted to accomplish through the 2017 Permit Application—to revise the 2013 Permit construction plans for Phase I to address the change in effluent source from untreated household discharge to treated food processing wastewater. We agree with KOWC, however, that Artesian's and DNREC's description of the 2017 Permit Application as an "amendment" to the 2013 Permit has no support in the 2014 Regulations. Under Section 6.3.1.14.1 of the 2014 Regulations, a permit

---

[24] 7 *Del. Admin. Code* § 7101-6.5.3.3.1 ("In consultation with the permittee, the Department may modify or amend an existing permit provided that the modifications would not result in an increased impact or risk to the environment or public health.").

application is still required and must include an HSR and SWAR unless the Section itself imposes its own requirements separate from those that apply to an original construction permit application. We find that it does.

As noted earlier, Section 6.3.1.14.1 addresses an existing permit holder who wants to make changes to that permit. Artesian proposed a "change" in its construction plans under its 2013 Permit to accommodate a different source of effluent. Although Artesian's 2017 Permit Application is akin to an amendment to its 2013 Permit, we read the Section differently. Under the Section, when Artesian sought to change its 2013 Permit to accommodate a new effluent source, Section 6.3.1.14.1 required Artesian to submit "plans and specifications and design engineering report" with its 2017 Permit Application. As we read the statute, the plans and specifications and design engineering report submitted under Section 6.3.1.14.1 are separate from the other regulatory requirements and do not include an HSR and SWAR.

Three basic points support our interpretation. First, if DNREC had wanted applicants to start from scratch, DNREC could have simply stated in the Section that an existing permit holder must submit a new application. In that event, Sections 6.1 and 6.5 would require an HSR and SWAR and other submissions. DNREC, however, chose a different path. Section 6.3.1.14.1 states what must be submitted with an application to change construction plans under an existing permit—"plans

14

and specifications and design engineering report." The Section does not mention an HSR or SWAR. Second, we must give meaning to "plans and specifications and design engineering report." If it meant the same as the requirements of Sections 6.1 and 6.5, it would be unnecessary to include the language.[25] And finally, to secure the 2013 Permit, Artesian already submitted for review and approval environmental and engineering reports to spray wastewater on the site. In the context of an application to change an existing permit, it makes sense that DNREC would not require start-from-scratch environmental and engineering reports as long as the application stayed within the boundaries of the existing permit.

Our interpretation of Section 6.3.1.14.1 does not leave DNREC powerless to review proposed changes to an existing permit. DNREC must still decide whether the proposed changes are consistent with the existing permit, which is what DNREC did here. DNREC scrutinized the size increase of the on-site wastewater storage pond from 62 to 90 million gallons.[26] The Secretary found the change insignificant because the pond is still on the approved 75 acre parcel, is similar to other farm ponds, and will have a landscaped buffer.[27] DNREC also found that delaying wastewater treatment plant construction "will reduce the amount of disturbance"

---

[25] *Garrison v. Red Clay Consol. Sch. Dist.*, 3 A.3d 264, 276 (Del. 2010) (quoting *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892 (Del. 1994)) (when interpreting statutes and regulations, the court should avoid surplusage).
[26] App. to Opening Br. at A072 (Secretary's Order No. 2017-W-0029, at 5); *Id.* at A091-92.
[27] *Id*. at A094.

during Phase I and improve the quality of the sprayed wastewater.[28] And finally, the reduction in spray irrigation areas did not change the original planned acreage or volume of wastewater sprayed on the fields.[29] All of these findings are supported by the record. If DNREC had found that Artesian's proposed changes were inconsistent with its 2013 Permit, DNREC was free to reject the 2017 Permit Application and require a start from scratch wastewater treatment construction permit.

### III.

The EAB applied the 2014 Regulations—specifically Section 6.3.1.14.1—to Artesian's 2017 Permit Application. Under Section 6.3.1.14.1, DNREC approved Artesian's 2017 Permit Application requesting changes to its 2013 Permit after reviewing and approving the "plans and specifications and design engineering report" required under that Section. Artesian did not have to submit an HSR or SWAR to secure the changes to its 2013 Permit. The judgment of the Superior Court is affirmed.

---

[28] *Id.* at A072, A076 (Secretary's Order No. 2017-W-0029, at 7, 9); *Id.* at A093.
[29] *Id*. at A092; *Id.* at A426, A431.